**NESTLÉ FOODS CORPORATION,**
Plaintiff,

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant.**

Civ. No. 89–1701 (CSF).

United States District Court,
D. New Jersey.

Dec. 29, 1993.

Pitney, Hardin, Kipp & Szuch, Morristown, NJ by William H. Hyatt, Jr., Donald W. Kiel, Robert G. Rose, Covington & Burling, Washington, DC by Mitchell F. Dolin, Laurence J. Eisenstein, Michelle Peterson, for plaintiff.

Harwood Lloyd, Hackensack, NJ by Brian R. Ade, Kim E. Sparano, for defendant.

## OPINION

FISHER, District Judge.

Before the court are cross-motions for summary judgment for declaratory relief brought by plaintiff, Nestlé Foods Corporation ("Nestlé"), and by defendant, Aetna Casualty & Surety Company ("Aetna"). For the reasons set forth below, plaintiff's summary judgment motion is granted in part and denied in part, and defendant's summary judgment motion is denied in its entirety.

This insurance-coverage action was filed by Nestlé in April 1989 to secure indemnification and defense-cost coverage for its environmental liabilities to the state and federal governments in connection with the Lone Pine Landfill. From February 20, 1974, to January 1, 1984, Aetna issued a series of general-liability insurance policies to Nestlé which provided coverage for, *inter alia*, "all sums which the insured shall become legally obligated to pay as damages because of ... property damage." *See Morton Int'l Inc. v. General Accident Ins. Co.*, 134 N.J. 1, 24–25, 629 A.2d 831 (1993) (Damages "because of property damage" encompass cleanup obligations imposed by a governmental authority for environmental contamination.). The parties have stipulated to the fact that there has been property damage which will trigger coverage under each of the Aetna policies unless any defense or exclusion applies.

Since the 1940's, Nestlé has owned and operated a coffee-manufacturing plant in Freehold Township, New Jersey. Both par-

ties acknowledge that trash and wastes from the Nestlé plant were picked up by Freehold Cartage, Inc., a duly licensed waste hauling company, which, in turn, transported and disposed of them at, among other locations, the Lone Pine Landfill, a state-regulated waste-disposal facility.

The State of New Jersey closed the landfill in 1979. During the 1980's Nestlé and other companies became the subject of proceedings initiated by the New Jersey Department of Environmental Protection ("DEP") (since 1991 the Department of Environmental Protection and Energy) and the United States Environmental Protection Agency ("EPA"). Pursuant to decrees entered by this court in 1990 and 1992, Nestlé and other companies have been required to fund a cleanup of the landfill and its environs. *See United States v. Acton Corp.,* 733 F.Supp. 869 (D.N.J.1990); *United States v. Acton Corp.,* No. 91–2873–GEB (D.N.J. Jan. 6, 1992).

During the 1960's and 1970's, Nestlé used the solvents trichloroethene ("TCE") and methylene chloride ("MC") as part of its decaffeination process at the Freehold plant. The EPA held Nestlé liable because it had found TCE, MC and other contaminants in the groundwater at Lone Pine and concluded that some of these contaminants are traceable to Nestlé's waste stream. Both parties to this suit acknowledge that TCE and MC were among the waste products transported by Freehold Cartage, Inc. and disposed of at the Lone Pine Landfill. The groundwater contamination that had occurred at Lone Pine was not discovered until the early 1980's. The EPA notified Nestlé that it was a potentially responsible party with respect to Lone Pine in July of 1982. Nestlé was named as a third-party defendant in the DEP's Lone Pine lawsuit in August 1983.

Nestlé's summary-judgment motion centers on whether coverage for property damage is barred by either of two exclusionary clauses in the Aetna policies: the expected/intended exclusion and the pollution exclusion. Nestlé alleges that Aetna is precluded as a matter of law from raising the expected/intended defense on the basis of estoppel. Nestlé asserts that, since Aetna issued and renewed Nestlé's policies between 1974 and 1983 with specific knowledge of Nestlé's manufacturing and environmental practices, Aetna is estopped from invoking the expected/intended defense. Likewise, or in the alternative, since Aetna allegedly unearthed no evidence to support an expected/intended defense during its five-year coverage investigation, Aetna is precluded from asserting the defense because its current assertion of the expected/intended defense is in bad faith and barred as a matter of law.

Aetna also moves for summary judgment on the expected/intended defense, asserting that the pollution at Lone Pine was expected and intended applying the requisite factors under *Morton,* 134 N.J. at 86–87, 629 A.2d 831. Further, Aetna moves for summary judgment on the pollution exclusion issue, alleging that Nestlé's claim for coverage falls within the ambit of that exclusion. Finally, Aetna asserts that Nestlé is not entitled to insurance coverage pursuant to the personal injury liability endorsement of Aetna's policies and that Nestlé's claims for punitive damages should be dismissed under New Jersey substantive law.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Brown v. Hilton,* 492 F.Supp. 771, 774 (D.N.J.1980). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This "burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving

party so that a reasonable jury could return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the court, however, is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

█ First, the court will address both parties' summary judgment motions on the expected/intended defense issue. Nestlé asserts that Aetna should be estopped from raising that defense, since Aetna's prior underwriting conduct is flatly inconsistent with its current litigating position. Specifically, Nestlé alleges that Aetna's independent investigations of Nestlé's manufacturing processes and environmental controls at Nestlé facilities, including the Freehold plant, taken together with Aetna's renewal of the subject policies each year, created a reasonable expectation that, if Aetna in fact had had cause for concern, it would have so informed Nestlé at the time, rather than remaining silent and invoking those concerns as a basis for denying a claim many years later. Nestlé cites *Morton*, 134 N.J. at 76, 629 A.2d 831, for the proposition that "[a]n insurance doctrine closely related to 'estoppel' holds that insurance contracts should be enforced to accord with the objectively-reasonable expectations of the insured...." After several years of silence, Aetna's assertion of the expected/intended defense is "inconsistent with public expectations and commercially accepted standards" and, therefore, should not be countenanced. *Id.* (quoting *Sparks v. St. Paul Ins. Co.*, 100 N.J. 325, 338, 495 A.2d 406 (1985)). In further support of this line of reasoning, Nestlé refers to the conclusion reached in a Special Master Report in *J.T. Baker, Inc. v. Aetna Cas. & Sur. Co.*, Civil Action No. 86–4794 (D.N.J. Sept. 23, 1993). "[I]f facts are shown as to a particular site from which it is concluded that [the insured] 'intended or expected' the particular harm in question ... [an insurer] may be estopped from asserting such as a basis for non-coverage if [the in-

sured] can establish that the insurer in question had knowledge of essentially the same facts possessed by [the insured] and continued to renew coverage and collect premiums." *J.T. Baker Report* at 42–43.

Applying these principles to the instant case, Nestlé must present a record sufficient to establish that Aetna had knowledge of essentially the same facts possessed by Nestlé regarding the groundwater pollution problems at the Lone Pine Landfill. The information which Nestlé presents does not surmount this requirement. This information includes details of Aetna inspections of all Nestlé facilities, including the Freehold site itself, and an Aetna report regarding "pollution controls" at the Freehold plant, all of which do not relate to Lone Pine. Further, there are unresolved issues of material fact relating to the quality of Nestlé's knowledge relating to Lone Pine groundwater pollution. Accordingly, Nestlé fails to discharge its burden of demonstrating an absence of any genuine issue of material fact on the issue of Aetna's knowledge in the estoppel context. Nestlé's estoppel argument is thus utterly without merit, and summary judgment on this theory is denied.

█ Nestlé also asserts that Aetna should be barred from raising the expected/intended defense on the basis that Aetna's refusal to pay insured's claim in the wake of a 1983–88 claims-evaluation process (an investigation preceding the institution of the instant suit, which purportedly yielded no evidence to support an expected/intended defense) constitutes bad faith. Although New Jersey law does extend the implied duty of good faith and fair dealing "to the 'assertion, settlement and litigation of contract claims and defenses,'" *Riveredge Assoc. v. Metropolitan Life Ins. Co.*, 774 F.Supp. 897, 899 (D.N.J.1991) (quoting Restatement (Second) of Contracts § 205, comment e), Nestlé offers no New Jersey case law to support the proposition that an insurer can be barred from raising the expected/intended defense solely on the basis of the quality of information obtained prior to formal discovery; nor will this court condone a result which would tend to defeat

the purpose of discovery.[1] Rather, Nestlé can resort to a properly-briefed Rule 11 motion, which this court deems appropriate in the context of Nestlé's allegation that Aetna's assertion of the expected/intended defense is unsupported by fact. Accordingly, Nestlé's motion for summary judgment on the expected/intended defense in the context of the 1983–88 Aetna claims-evaluation process is denied.

■ Aetna moves for summary judgment on the expected/intended defense issue as well. This defense is premised on language in the "occurrence" definition of the subject policies, which limits coverage to "property damage neither expected nor intended from the standpoint of the insured." The Supreme Court of New Jersey, reviewing this language, concluded "that in environmental-coverage litigation a case-by-case analysis is required in order to determine whether, in the context of all the available evidence, 'exceptional circumstances [exist] that objectively establish the insured's intent to injure.'" *Morton*, 134 N.J. at 86, 629 A.2d 831 (citing *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 185, 607 A.2d 1255 (1992). The court identified the "exceptional circumstances" to include:

> ... the duration of the discharges, whether the discharges occurred intentionally, negligently, or innocently, the quality of the insured's knowledge concerning the harmful propensities of the pollutants, whether regulatory authorities attempted to discourage or prevent the insured's conduct, and the existence of subjective knowledge concerning the possibility or likelihood of harm.

*Morton*, 134 N.J. at 86–87, 629 A.2d 831.

Implicit in the court's analysis is the recognition of the highly fact-sensitive nature of the type of damage that must be "intended" and inquiry into the subjective nature of the insured's intent to injure. Applying these principles to the facts of the instant case, I find that Aetna must demonstrate with support from the record that Nestlé "expected/intended" to cause the environmental damage at Lone Pine and that Nestlé "expected/intended" damage that is at least "qualitatively comparable" to the property damage that triggered the EPA and DEP actions at Lone Pine under the *Morton* "exceptional circumstances" scheme. Intent to injure, simply on the basis of a knowing discharge of pollutants, is not presumed. *Id.* at 86, 629 A.2d 831. The record as proffered by Aetna hardly sustains this requirement under a summary-judgment standard.

Aetna fails to demonstrate the absence of any genuine issue of material fact with regard to the "quality" of Nestlé's knowledge. In its brief, Aetna merely recites the amount of materials disposed of (solid wastes and liquid wastes) during the years 1959 through 1979. Defendant's summary-judgment brief at 14. Other information includes a Nestlé manual pertaining to decaffeination operations at Nestlé plants which indicates that TCE should be used with caution, *id.* at 15, the amount of TCE contained in emulsion wastes at the Freehold plant, *id.* at 16, and the fact that employees who handled TCE [2] should wear protective clothing and that exposure could require medical care. *Id.* at 17.

Further, Aetna offers contemporary newspaper articles in an attempt to impute subjective knowledge of groundwater pollution relating to Nestlé's waste stream, *id.* at 21–22; however, these articles apparently make no reference to the presence of TCE and MC or to Nestlé itself. A reference to the fact that Nestlé set limits on the amount of MC contained in its wastewater, *id.* at 22–23, reveals no nexus to the issue of Nestlé's knowledge with regard to Lone Pine groundwater pollution; rather, Aetna merely highlights Nestlé plant procedures presumably designed to prevent accidental loss of solvents.

Aetna fails to offer any support from the record which demonstrates the absence of a

---

1. This line of reasoning is applicable to Nestlé's claim that Aetna's 1983–88 claims-evaluation process bars the expected/intended defense framed under a bad-faith theory or an estoppel theory. This reasoning is equally applicable to Nestlé's breach claim for bad faith. Accordingly, the court does not reach Nestlé's request for attorney's fees on the grounds alleged.

2. The court cannot discern the form of TCE.

genuine issue of material fact with regard to the quality of Nestlé's knowledge. Aetna offers no objective basis to suggest that there is an absence of evidence to support Nestlé's assertion that it had no knowledge that TCE, MC or any other contaminant was escaping into the environment at Lone Pine or that these contaminants would harm the environment if they did escape. *See Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 817 F.Supp. 1136, 1152 (D.N.J. 1993) (The knowledge issue is "necessarily a disputed issue ... for resolution at trial.").

Accordingly, Aetna has failed to sustain its initial burden of demonstrating an absence of any genuine issue of material fact with respect to the quality of Nestlé's knowledge under the *Morton* "exceptional circumstances" scheme. Therefore, Aetna's summary judgment motion on the expected/intended defense is denied.

■ Even if it is assumed, arguendo, that Aetna sustains its initial burden, there exist genuine issues of material fact sufficient to defeat Aetna's summary-judgment motion on the expected/intended defense. In *Smith v. Hughes Aircraft Co.*, 10 F.3d 1448, 1454 (9th Cir.1993), the Ninth Circuit reversed a district court grant of summary judgment on the expected/intended defense. Its holding is applicable to the facts of the instant case, since TCE contamination was the focus of the court's analysis. In pertinent part, the court held:

> ... [T]he evidence that [the insured] expected or intended injuries caused by TCE contamination is insufficient for summary judgment. In reaching its conclusion that [the insured] expected or intended to cause injuries by its disposal of TCE, the district court relied on evidence that TCE was toxic in some concentration if ingested. However, [the insured] raises a genuine issue of material fact by arguing that, until recently, exposure to moderate amounts of TCE was not considered harmful. TCE was commonly used as an anesthetic and disinfectant. It was also used to extract hops, decaffeinate coffee, and to prepare fish meal. It was not until 1977 that the FDA first proposed banning TCE as a food additive. The first recommended,

non-binding TCE standard for drinking water was not promulgated by the EPA until 1979. Moreover, [the insured] introduced evidence that the common and preferred method of disposing of TCE was to put it on the ground to evaporate. Further, throughout the applicable period, regulatory agencies did not comment on [the insured's] TCE disposal practices.

*Smith*, at 1455. Aetna and Nestlé each raise similar arguments and evidence considered by the Court in *Smith*. Since Nestlé has been held accountable, in part, for TCE contamination at the Lone Pine facility, there exist genuine issues of material fact on the expected/intended defense that render summary disposition inappropriate.

■ Aetna also moves for summary judgment on the basis of the doctrines of "known loss" and "loss-in-progress." The tenor of the argument and factual references that Aetna highlights in its brief with regard to the "known loss" and "loss-in-progress" principles compel the conclusion that these are germane to the expected/intended inquiry. *See J.T. Baker Report* at 45 ("The 'known risk' argument advanced by [the insurer] is in substance the same as the 'expected or intended' argument.... Consequently, the contention of [the insurer] based upon 'known risk' will be resolved upon resolution of the 'expected or intended' issue.") Likewise, this court finds that the analysis that guided its disposition of the expected/intended defense is equally applicable to the assertions and supporting proofs offered by Aetna in its "known loss" and "loss-in-progress" argument. Accordingly, Aetna's summary judgment motion on the "known loss" and "loss-in-progress" theories is denied. Nonetheless, Aetna cannot establish as a matter of law that Nestlé knew of any "loss" or that the contamination at the Lone Pine landfill was in progress such that coverage, at least at this juncture, should be denied.

Underlying the "known loss" doctrine is the basic premise that insurance is intended to cover risks which are not definitely known to the insured. The related doctrine of "loss-in-progress" provides that one cannot insure a loss that is already in progress. *Appalachian Ins. Co. v. Liberty Mutual Ins. Co.* 676

F.2d 56, 63 (3d Cir.1982). Factual disputes as to whether Nestlé knew of any "loss" and as to whether any "loss" was in progress before the effective dates of any of the Aetna policies at issue cannot be resolved on a motion for summary judgment.

■ Both parties move for summary judgment on the issue of the pollution exclusion contained in the subject policies. The exclusion provides:

This insurance does not apply: (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

■ As a federal court sitting in diversity, this court must predict how the highest court of the state would rule. *Adams v. Madison Realty & Dev., Inc.,* 853 F.2d 163, 168 (3d Cir.1988); *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 376 (3d Cir.1987). The law of New Jersey with respect to the pollution clause was clarified by the Supreme Court in *Morton.* Accordingly, that decision will inform and guide this court's determination of the threshold definition of the term "discharge" employed in the pollution exclusion clause.

The New Jersey Supreme Court interpreted the pollution exclusion in *Morton,* 134 N.J. at 78, 629 A.2d 831, holding that:

[N]otwithstanding the literal terms of the standard pollution-exclusion clause [as in the instant case], that clause will be construed to provide coverage identical with that provided under the prior occurrence-based policy, except that the clause will be interpreted to preclude coverage in cases in which the insured intentionally discharges a known pollutant, irrespective of whether the resulting property damage was intended or expected. We expressly limit our holding concerning the limited effect of the pollution-exclusion clause to cases in which the insured or an agent

specifically authorized to act for the insured intentionally discharges a known pollutant. . . .

Nestlé argues that Aetna cannot deny coverage on the basis of the pollution exclusion, since it cannot make the threshold showing that Nestlé "discharged" anything under *Morton.* This court is inclined to agree with the argument advanced by Nestlé.

■ The plain meaning of "discharge, dispersal, release or escape" does not extend to disposal of wastes into a landfill, particularly where "[t]here is no dispute that Nestlé's wastes were intentionally discharged into and onto the landfill by Freehold Cartage, Inc. and Lone Pine Corporation," Deft.S.J.Brf. at 27, two entities apparently independent from Nestlé, under established rules of construction of insurance contracts in New Jersey. "Discharge, dispersal, release [and] escape" are all undefined terms in the subject policy. As such, they are to be accorded their plain and ordinary meanings. *Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 175, 607 A.2d 1255 (1992). To the extent that the language is ambiguous, it must be construed in favor of coverage. *Voorhees,* 128 N.J. at 175, 607 A.2d 1255. Moreover, clauses of exclusion are to be given a particularly strict and narrow interpretation. *Ohio Cas. Ins. Co. v. Flanagin,* 44 N.J. 504, 513–14, 210 A.2d 221 (1965) (citing *Mazzilli v. Accident & Cas. Ins. Co.,* 35 N.J. 1, 7–8, 170 A.2d 800 (1961)).

Applying these principles of construction to the language of the pollution exclusion, the court finds that the plain and ordinary meanings of "discharge, dispersal, release or escape" do not encompass the transfer of wastes to an independent hauler which, in turn, disposes of the wastes at a landfill as a matter of law. All of these terms intrinsically evoke a transition from a state of confinement to movement. *See J.T. Baker Report* at 80, the argument advanced by Aetna that deposit of wastes in a landfill is intentionally discharged into the landfill "misses the point so far as the actual language of the policies is concerned." *F.L. Aerospace v. Aetna Cas. & Sur. Co.,* 897 F.2d 214, 220 (6th Cir.1990), *cert. den.,* 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990) ("The [m]ere delivery of

waste for storage at a facility that is licensed to store waste is not a discharge of pollutants into the environment."). Likewise, all of Aetna's arguments and citations in support of its contention that "[a]s long as there is a reasonable relationship between the pollution and the pollutants, coverage is excluded," Def't. Opp. Brf. at 4, are not consistent with the scope of the pollution exclusion established by *Morton* (insured ". . . intentionally discharged . . . a known pollutant"). Indeed, all of Aetna's opposing arguments and citations in its opposition and summary-judgment motion are inapposite with regard to the construction of the term "discharge." Although *Morton* does not construe the term "discharge," this court is guided by the premise that the plain meaning of the pollution-exclusion clause itself compels the conclusion that "discharge, dispersal, release or escape" does not extend to the disposal of waste at a landfill under the circumstances attendant to Nestlé's claims. Accordingly, Nestlé's motion for summary judgment on the pollution exclusion is granted, since Aetna has failed to meet the threshold definition of "discharge," as that term is employed under *Morton*. Therefore, Aetna is barred from raising the pollution exclusion clause as a means of denying coverage on the subject policies.

■ Finally, Aetna moves for summary judgment on two issues which the court deems inappropriate for summary judgment disposition at this juncture. Aetna asserts that Nestlé is not entitled to insurance coverage pursuant to the personal-injury liability provision ("PIL") of Aetna's policies. The PIL clause provides, in pertinent part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:
>
> . . . .
>
> Group C-wrongful entry or eviction, or other invasion of the right of private occupancy;
>
> . . . .

if such offense is committed during the policy period within the United States of America.

Aetna cites one unpublished New Jersey authority which bars PIL coverage in the context of pollution liability, *Morton Thiokol, Inc. v. General Accident Insurance Company of America*, No. C–3956–85 (N.J.Super.Ct., Ch.Div., 8/27/87); however, Nestlé argues that *Morton Thiokol* is distinguishable. The *Morton Thiokol* court held that there was no coverage under the PIL provisions where the underlying action involved contamination of Berry's Creek. The court found that there was no interference with "private occupancy," because the "waters of Berry's Creek are public property." Slip op. at 28. Nestlé asserts that in this case, as distinguished from *Morton Thiokol*, the rights of private parties are implicated in prospective claims against Nestlé. Nestlé asserts that the contamination of groundwater off site from Lone Pine is at such concentration as to prohibit private drinking, and that, consequently, neighboring property owners' rights of private occupancy have been invaded within the meaning of PIL coverage. The court finds that the plain meaning of the PIL provision itself, taken together with the New Jersey substantive law in the area of the use of groundwater, precludes the grant of summary judgment at this juncture.

In *Meeker v. City of East Orange*, 77 N.J.L. 623, 74 A. 379 (E & A 1909), the Court of Errors and Appeals held that a landowner does not have an absolute and unqualified property right in all water that may be found percolating through his soil, but that his right is measured by the "use of such waters in a reasonable manner and to a reasonable extent for his own benefit, as in agriculture, irrigation, manufacturing, domestic consumption and the like, and without undue interference with the rights of other landowners to like use and enjoyment of water courses percolating beneath their land, or of water courses fed therefrom." *Meeker*, 77 N.J.L. at 623, 74 A. 379. *See Middlesex Water Co. v. Board of Public Utility Com'rs of N.J.*, 10 F.2d 519 (D.N.J.1926), *appeal dismissed*, 275 U.S. 483, 48 S.Ct. 18, 72 L.Ed. 385 (1927),

recognizing the reasonable-use doctrine in the context of underground waters. Rights in underground water are "usufructuary," denoting the right to use and enjoyment. *Woodsum v. Township of Pemberton,* 172 N.J.Super. 489, 571, 412 A.2d 1064 (L.Div. 1980), *aff'd,* 177 N.J.Super. 639, 427 A.2d 615 (App.Div.1981).

Construing the language of the PIL itself, the phrase "other invasion of the right of private occupancy" is apparently not defined in the subject policy. Accordingly, under principles of construction already set forth herein, the court must construe this language in favor of coverage. Likewise, this court cannot rule as a matter of law that the right of private occupancy does not extend to the reasonable use of untainted groundwater, whether in the context of remediation costs incurred by Nestlé in connection with the governmental proceedings or in the context of prospective claims of private parties. Furthermore, the court has not been presented with any evidence on the precise character of any particular private water supply relating to groundwater pollution. Additionally, both sides apparently acknowledge that no private claims have yet been presented to Nestlé. Accordingly, the issue of groundwater pollution and the PIL is not ripe for summary judgment at this juncture, and Aetna's summary judgment motion with regard to the PIL is denied.

■ Finally, Aetna contends that Nestlé's claims for punitive damages should be dismissed as a matter of law, asserting that New Jersey Law does not permit punitive damages for breach of contract. *Sandler v. Lawn–A–Mat Chem. & Equip. Corp.,* 141 N.J.Super. 437, 449, 358 A.2d 805 (App.Div.), *cert. denied,* 71 N.J. 503, 366 A.2d 658 (1976). Aetna apparently correlates the punitive-damages claim to Nestlé's bad-faith claim sounding in contract. The parties agree that *Pickett v. Lloyd's,* 131 N.J. 457, 476–477, 621 A.2d 445 (1993), stands for the proposition that an insured could recover punitive damages against a first-party insurer upon a showing of an independent tort. In *Pickett,* the New Jersey Supreme Court held that, "absent egregious circumstances, no right to recover for emotional distress or punitive

damages exists for an insurer's allegedly wrongful refusal to pay a first-party claim." 131 N.J. at 476, 621 A.2d 445. The court indicated that this "[o]bviously [does not] grant a license to commit torts. Clearly cases may arise in which the insurance company's conduct in response to an insured's claim for payment constitutes an independent tort." *Id.* at 476–77, 621 A.2d 445. Under the record as presented by the parties thus far, this court cannot make any determinations with regard to the issue of "egregious circumstances." Accordingly, Aetna's motion for summary judgment on the issue of punitive damages is denied.

Based on the foregoing, Nestlé's motion for summary judgment is denied with respect to the expected/intended defense and granted with respect to the pollution exclusion. Accordingly, Aetna is precluded from raising the pollution exclusion at trial. Aetna's motion for summary judgment is denied in its entirety. No costs.

THIS MATTER having been opened to the court on cross-motions for summary judgment filed by plaintiff, Nestlé Foods Corporation, and by defendant Aetna Casualty & Surety Company; and the court having considered the written submissions and oral argument of counsel; and for good cause shown,

IT IS on this 28th day of December, 1993,

ORDERED that defendant's motion be and hereby is denied; and it is further

ORDERED that plaintiff's motion for summary judgment is denied with respect to the "expected/intended" defense and granted with respect to the pollution exclusion clause of the insurance policy that is the subject of the within matter.