ADVANCED WASTE SERVICES, INC., Plaintiff,

v.

UNITED MILWAUKEE SCRAP, LLC,
Defendant-Third-Party Plaintiff-Appellant,

v.

ILLINOIS NATIONAL INSURANCE COMPANY,
Third-Party Defendant-Respondent.

Court of Appeals

*No. 2014AP1169. Submitted on briefs January 6, 2015.
—Decided March 3, 2015.*

2015 WI App 35

(Also reported in 863 N.W.2d 634.)

On behalf of the defendant-third-party plaintiff-appellant United Milwaukee Scrap, LLC, the cause was submitted on the briefs of *Michael J. Ganzer* of *Terschan, Steinle, Hodan & Ganzer, LLP*, of Milwaukee.

On behalf of the third-party defendant-respondent, the cause was submitted on the brief of *Jeffrey A. Schmeckpeper* and *Heather D. Willick* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee, and *Joseph A.*

*Hinkhouse, Sarah H. Dearing* and *Courtney Zanocco*, *pro hac vice*, of *Hinkhouse Williams Walsh, LLP*, of Chicago, Illinois.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J. United Milwaukee Scrap, LLC, appeals the trial court's grant of summary judgment on its third-party complaint against its insurer, Illinois National Insurance Company (Illinois National). United Milwaukee Scrap was sued by Advanced Waste Services, Inc., after wastewater United Milwaukee Scrap provided was found to be contaminated with PCBs,[1] and Illinois National refused to defend the claim, arguing that the "total pollution exclusion" in its policy precluded coverage. The trial court agreed with Illinois National and granted summary judgment in its favor. On appeal, United Milwaukee Scrap claims that the total pollution exclusion does not apply because United Milwaukee Scrap was not the entity who dispersed the pollutant. It also argues, in the alternative, that the policy is ambiguous. We disagree and affirm.

## BACKGROUND

¶ 2. United Milwaukee Scrap is a company that buys, processes, and sells scrap metals generated from industrial waste, obsolete materials, and construction demolitions. Advanced Waste Services is a waste-hauling service that recycles oily waste water and resells the used oil. Prior to the suit giving rise to this appeal, United Milwaukee Scrap contracted with Advanced Waste to remove wastewater from its facilities.

---

[1] "PCB" stands for "polychlorinated biphenyl."

726

Pursuant to the contract, United Milwaukee Scrap would deliver its oily wastewater to Advanced Waste, and Advanced Waste would then take the water to its "ChemWorks" facility for processing.

¶ 3. In February 2013, Advanced Waste sued United Milwaukee Scrap for negligence, intentional misrepresentation, negligent misrepresentation, strict responsibility, and breach of contract, among other causes of action. According to the complaint, the wastewater removed from United Milwaukee Scrap's facility was contaminated with PCBs, which contaminated ChemWorks during the recycling process. Advanced Waste further alleged that it remained unaware of the PCBs until after the wastewater "circulated throughout substantial portions of the ChemWorks Treatment Facility, thus contaminating [its] facility, equipment, and product." The complaint alleged that the contamination was ultimately caused by United Milwaukee Scrap's failure to disclose the existence of PCBs in its wastewater.

¶ 4. After Advanced Waste filed its claim, United Milwaukee Scrap notified Illinois National, its insurer, but Illinois National refused to defend the lawsuit. Illinois National denied coverage on the basis of the "TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION."[2] As relevant here, that exclusion prohibited coverage for:

> (1) . . . "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time . . . .

> (2) Any loss, cost or expense arising out of any:

---

[2] The "TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION" replaced an earlier pollution exclusion in the policy.

(a) Request, demand, order or statutory or regulatory requirement that any insured or others . . . clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

¶ 5. Because Illinois National refused to defend the lawsuit, United Milwaukee Scrap filed a third-party complaint against Illinois National. The third-party complaint alleged that Illinois National had breached its duty to defend and indemnify under the policy.

¶ 6. Illinois National in turn filed a motion for summary judgment, arguing that it had no duty to defend the claim against United Milwaukee Scrap because the allegations fell within the policy's total pollution exclusion. In its summary judgment response, United Milwaukee Scrap admitted that PCBs are "pollutants" under the policy and that the pollutants were at some point "dispersed." It argued that the exclusion did not apply, however, because United Milwaukee Scrap—*i.e.,* the insured—did not cause the pollutant's dispersal.

¶ 7. The trial court granted summary judgment in Illinois National's favor. United Milwaukee Scrap now appeals.

### ANALYSIS

*Standards of Review*

¶ 8. We review the trial court's grant of summary judgment *de novo,* applying the same methodology as the trial court. *See Young v. West Bend Mut. Ins. Co.,* 2008 WI App 147, ¶ 6, 314 Wis. 2d 246, 758 N.W.2d 196. The rest of the summary judgment standard is well-known, and this court need not explain it in detail

here. *See* Wɪs. Sᴛᴀᴛ. § 802.08 (2013–14);[3] *Alliance Laundry Sys., LLC, v. Stroh Die Casting Co.*, 2008 WI App 180, ¶ 12, 315 Wis. 2d 143, 763 N.W.2d 167. It suffices to say that this court will only grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *See* § 802.08(2).

¶ 9. This case also involves the construction of an insurance contract, which we review *de novo. See Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 30, 319 Wis. 2d 52, 768 N.W.2d 596. "The same rules of construction that govern general contracts are applied to the language in insurance polices." *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. We construe insurance policies "to give effect to the intent of the parties as expressed in the language of the policy." *Id.*

¶ 10. "There is an established framework for determining whether coverage is provided under the terms of an insurance policy." *Olson v. Farrar,* 2012 WI 3, ¶ 40, 338 Wis. 2d 215, 809 N.W.2d 1. First, we examine whether the policy makes an initial grant of coverage. *See id.,* ¶ 41. If the initial grant of coverage is triggered by the claim, we then examine the various exclusions to determine whether they preclude coverage. *See id.* "If so, the court then determines whether there is an exception to the exclusion which reinstates coverage." *Id.*

"Of primary importance is that the language of an insurance policy should be interpreted to mean what a

[3] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

reasonable person in the position of the insured would have understood the words to mean." If a word or phrase is susceptible to more than one reasonable interpretation, it is ambiguous. "[B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses—so long as the language conforms to statutory and administrative law—ambiguity in that language is construed in favor of an insured seeking coverage."

*Id.*, ¶ 42 (citations and quotation marks omitted; brackets in *Olson*). Furthermore, while "we must read insurance policies from the standpoint of a reasonable insured," *see Sobieski v. Farmers Ins. Exch.*, 181 Wis. 2d 324, 331, 510 N.W.2d 796 (Ct. App. 1993), "[w]e will not interpret a policy 'to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium,' " *see State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 15, 275 Wis. 2d 35, 683 N.W.2d 75 (citation omitted).

*Summary judgment must be affirmed because the "Total Pollution Exclusion With a Hostile Fire Exception" bars coverage.*

¶ 11. With the proper standards in mind, and given that the parties do not dispute that the policy initially grants coverage, *see Olson*, 338 Wis. 2d 215, ¶ 41, we turn to the undisputed facts and the language of the policy's total pollution exclusion. As noted, the exclusion bars coverage for, among other things:

"property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

¶ 12. According to United Milwaukee Scrap, there was no "pollutant" and no "dispersal" as defined by the policy because the PCBs were not released until *after* the wastewater left United Milwaukee Scrap's possession; moreover, once it was transferred it "was the duty of Advanced Waste to ensure that the wastewater was not contaminated." It argues, "[a]t no point during the transfer of [wastewater] from United Milwaukee to Advanced Waste did it become a pollutant within the meaning of the Illinois National policy; it was always a contained substance of which Advanced Waste customarily took delivery of as part of its business." What this actually means, however, is that United Milwaukee Scrap does not dispute that Advanced Waste's complaint alleges the dispersal of pollutants; rather, it contends that the exclusion does not apply because United Milwaukee Scrap, the insured, did not disperse the pollutant.

¶ 13. We disagree. Under the plain language of the policy there is no requirement that the insured disperse the pollutant for the exclusion to apply. As we see from the policy language above, no actor is specified, leaving the possibility that a pollutant could be dispersed in any number of ways—including without the direct action of any party at all. Additionally, the phrase "at any time" leaves open a scenario under which a pollutant might be, either intentionally or unintentionally, dispersed without any action by the insured. We thus conclude that the policy does not require that the insured disperse the pollutant in order for the exclusion to apply. Therefore, the fact that Advanced Waste dispersed the pollutant does not prevent us from applying the total pollution exclusion here.

¶ 14. Our conclusion is supported by *Hirschhorn v. Auto-Owners Insurance Co.*, 2012 WI 20, 338 Wis. 2d 761, 809 N.W.2d 529, a relatively recent supreme court case interpreting an identical policy exclusion. In *Hirschhorn*, the Hirschhorns sued their insurer for refusing to cover the loss of their vacation home, which was rendered uninhabitable due to the " 'penetrating and offensive odor' " of bat guano that had escaped from inside the walls and permeated the entire home. *See id.*, ¶¶ 8–9, 12. The insurer claimed, as relevant here, that the policy's pollution exclusion, which "exclude[d] from coverage any 'loss resulting directly or indirectly from: ... discharge, release, escape, seepage, migration or dispersal of pollutants,' " barred coverage. *See id.*, ¶¶ 13, 25, 39 (citation omitted).

¶ 15. While the two issues before the supreme court in *Hirschhorn*—whether bat guano was a "pollutant" and whether the pollutant was "dispersed," *see id.*, ¶¶ 26, 38—are not before us, *Hirschhorn* is still instructive because the insureds did not directly disperse the pollutant. Rather, the bats that infiltrated their walls did. *See id.*, ¶¶ 7–8, 46. As Illinois National points out, there is no indication that the Hirschhorns did anything to cause the bat guano odor to contaminate their home.[4] The Hirschhorns' policy, like United Milwaukee Scrap's policy, did not specify whether coverage required a particular party to disperse a pollutant. *See id.*, ¶¶ 25, 39. Instead, that policy, like the one before us, applied to any loss involving the dispersal of pollutants. *See id.*

---

[4] Indeed, the Hirschhorns regularly arranged for neighbors or hired help to clean and inspect the home, and no sign of bats was discovered until July 2007, just one month before the Hirschhorns noticed the offensive smell. *See Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶¶ 6–8, 338 Wis. 2d 761, 809 N.W.2d 529.

¶ 16. We also note that *Hirschhorn* cited to *United States Fire Insurance Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 476 N.W.2d 280 (Ct. App. 1991), another case in which coverage was barred by a pollution exclusion even though the insured did not disperse the pollutant. *See Hirschhorn*, 338 Wis. 2d 761, ¶ 45. In *Ace Baking Co.*, Ace Baking Company, an ice-cream-cone manufacturer, stored its product in a warehouse that also housed Bounce fabric softener. *Id.*, 164 Wis. 2d at 501. After a customer complained that the ice-cream cones tasted like soap, Ace Baking Company discovered that an additive from the fabric softener had affected the ice-cream cones, rendering them unusable. *Id.* Ace Baking Company submitted a claim to its insurer, who refused to cover the claim because a policy exclusion barred coverage for "losses caused by or resulting from . . . [r]elease, discharge or dispersal of pollutants." *Id.* (citation and quotation marks omitted; brackets and ellipses in *Ace Baking Co.*). As in *Hirschhorn*, the issue in *Ace Baking Co.* was not whether the insured dispersed the pollutant. Rather, the issue was whether the additive—which was "harmless when properly used in appropriate products," *see id.* at 501—was a "pollutant," *see id.* at 502, 505. Nevertheless, we find *Ace Baking Co.* instructive because the pollution exclusion at issue there, which was substantially similar to the one before us here, applied even though the insured took no action that could be said to have caused the dispersal of the pollutant. *See id.* at 501.

¶ 17. Furthermore, we are not persuaded by United Milwaukee Scrap's citation to *Nestlé Foods Corporation v. Aetna Casualty and Surety Co.*, 842 F. Supp. 125 (D. N.J. 1993), a federal case interpreting a similar factual scenario to the one before us. In *Nestlé*

733

*Foods*, Nestlé, who owned a coffee-processing plant, contracted with another company to pick up its waste products. *Id.* at 126–27. The company then took the waste to, among other places, the Lone Pine Landfill. *Id.* at 127. After the landfill closed, the EPA required Nestlé to assist in its cleanup because environmental contaminants found there were traceable to Nestlé and its coffee-decaffeination process. *Id.* The relevant issue before the court was whether Nestlé's insurance policy, which had a pollution exclusion much like the Illinois National policy, covered the damages from the dispersal of the contaminants. *Id.* at 127, 131. The court ultimately found that the pollution exclusion *did not* bar coverage because nothing Nestlé, the insured, did dispersed the pollutant. *Id.* at 131–32. In other words, the court found that Nestlé's transfer of its waste to the company who hauled it away did not constitute dispersal of a pollutant. *Id.* at 131.

¶ 18. While United Milwaukee Scrap contends that *Nestlé Foods* should control, we disagree because it interprets New Jersey law, which reads an additional requirement into the standard pollution exclusion that Wisconsin does not. In New Jersey, the pollution exclusion only applies if the " 'insured intentionally discharges a known pollutant.' " *See id.* at 131 (citation omitted). This requirement exists even when it is not clearly denoted in the policy. *See Morton Int'l, Inc. v. General Accident Ins. Co. of Am.*, 629 A.2d 831, 875 (N.J. 1993). It exists because the New Jersey Supreme Court decided that public policy required the change due to deception about the scope of the exclusion by the insurance industry. *See, e.g., id.* at 875–76 ("Had the insurance industry candidly revealed the extent of the contraction in coverage intended by the pollution-exclusion clause, regulatory officials could

have made informed judgments concerning the rate and coverage issues implicated by the clause, and both commercial and governmental insureds would have been aware that insurance coverage for environmental pollution would be sharply restricted . . . . Not only did the insurance industry fail to disclose the intended effect of this significant exclusionary clause, it knowingly misstated its intended effect in the industry's submission of the clause to state Departments of Insurance."). United Milwaukee Scrap points to no Wisconsin law reading such a requirement into the pollution exclusion, and we decline to do so here. To read an additional requirement into the exclusion would go beyond the scope of this court and would contravene our long-standing commitment to interpreting insurance policies according to the plain meanings afforded by the contract language. *See, e.g., Folkman*, 264 Wis. 2d 617, ¶ 12.

¶ 19. Moreover, United Milwaukee Scrap's reliance on *Robert E. Lee & Associates, Inc., v. Peters*, 206 Wis. 2d 509, 557 N.W.2d 457 (Ct. App. 1996), is unavailing, as the issue there is unrelated and unhelpful to determining the question before us. In *Robert E. Lee & Associates*, the insured, David J. Peters, owned a gas station and ordered 6000 gallons of gas from Grosskopf Oil, which subcontracted delivery to Carl Klemm, Inc. *Id.* at 513. Klemm's employee pumped 500 more gallons of gas than Peters ordered into Peters' tank, causing a gas spill. *Id.* at 513–14. Peters sought coverage from his insurer on the basis that the spill was caused by a "loss related to a vehicle," which it claimed should be construed as a "specified cause of loss"—a particular exception to his insurance policy's pollution exclusion. *See id.* at 516–17. But this court disagreed, concluding that construing the policy to

include coverage from instances "arising out of" the use of a vehicle was too broad in circumstances where the policy mandated the damages be *caused by* the vehicle. *See id.* at 517–18. Instead, we concluded that the spill was caused by the conduct of Klemm's employee, not the actual use of the vehicle itself, and that the "specified cause of loss" exception did not reinstate coverage. *See id.* United Milwaukee Scrap claims that *Robert E. Lee & Associates* shows that "the fault . . . lies with the employee who dispersed the gasoline, not on the entity that provided the gasoline." But this argument misses the point. As we have already explained, under the plain terms of the policy before us, it does not matter who dispersed the pollutant, it only matters whether a pollutant was dispersed. *Robert E. Lee & Associates* in no way convinces us otherwise.

¶ 20. Finally, the total pollution exclusion at issue here is not ambiguous. United Milwaukee Scrap claims that the total pollution exclusion is ambiguous, but its argument is little more than a restatement of its earlier contention that because it did not disperse the pollutant, the exclusion should not apply. United Milwaukee Scrap's argument is insufficiently developed, and we will not consider it further. *See Stephenson v. Universal Metrics, Inc.*, 2001 WI App 173, ¶ 23 n.3, 247 Wis. 2d 349, 633 N.W.2d 707.

¶ 21. In sum, the exclusion at issue here bars coverage for occurrences involving the dispersal of pollutants, and such an occurrence is exactly what Advanced Waste's complaint against United Milwaukee Scrap alleged. United Milwaukee Scrap does not deny this. Rather, it attempts to read into the exclusion a limiting factor that simply does not exist under the policy's clear and unambiguous language and that has no basis in Wisconsin law. Consequently, we con-

736

clude that the exclusion bars coverage here, and that the trial court's grant of summary judgment must be affirmed.

*By the Court.*—Judgment affirmed.