OPINION OF THE COURT
Wilmer J. Patlow, J.
Defendant National Union Fire Insurance Company of Pitts *49 burgh, Pa. (hereinafter the insurer), moves to dismiss this declaratory judgment action brought against it by plaintiff Family Service of Rochester, Inc. (hereinafter Family Services).
This action was commenced to clarify defendant’s obligation to defend and indemnify plaintiff in an action entitled Snyder v Family Servs. (hereinafter Snyder) now pending in Supreme Court, Monroe County.
Defendant insurer has disclaimed coverage under the general liability insurance policy which was in effect at the time Snyder was commenced.
Defendant’s disclaimer is based upon two grounds.
First, defendant insurer asserts that it is obligated to defend and indemnify plaintiff only for damages resulting from an "occurrence” as that term is defined in the policy. According to defendant, the allegations in the Snyder complaint fail to allege such an "occurrence”.
Second, defendant insurer maintains that the damages sought in Snyder are specifically excluded from coverage by the pollution exclusion clause of the policy in question.
The factual allegations underlying Snyder are essentially that Family Services, acting on behalf of one Carl Jessie, a mentally impaired adult, caused to be delivered to Jessie’s residence large quantities of heating oil which overflowed Jessie’s fuel tank and migrated onto neighboring lands where it allegedly caused the injuries complained of by Jessie’s neighbors. The oil, totaling approximately 1,000 gallons, was delivered to Jessie’s home by an independent fuel service over a period of about two months and was pumped into a fuel tank which ordinarily required only about 200 gallons of fuel oil in an entire heating season.
The plaintiffs in Snyder allege that Family Services knew or should have known that inordinate amounts of fuel oil were being delivered to Jessie’s home, indicating leakage. In their amended complaint, the Snyder plaintiffs set forth three separate causes of action against Family Services: negligence, intentional trespass and nuisance.
Turning to the first basis for the insurer’s disclaimer, the policy defines "occurrence” as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.”
Defendant insurer characterizes Snyder as an action to *50 recover for injuries which were intentional rather than accidental in nature, and thus not attributable to an "occurrence”.
Defendant relies heavily upon the interpretation of "occurrence” found in County of Broome v Aetna Cas. & Sur. Co. (146 AD2d 337, lv denied 74 NY2d 614). However, that case is clearly distinguishable on its facts inasmuch as it involved allegations that the insured permitted the dumping of wastes for a period of 14 years and that the pollution continued even after the health authorities advised the insured to take remedial action.
This court concludes that the alleged delivery of fuel oil to Carl Jessie’s home over a period of approximately two months and the subsequent leakage from Jessie’s fuel oil tank and migration onto neighboring lands constitute an accidental "occurrence” neither expected nor intended by Family Services.
Accordingly, this court determines that the allegations of the Snyder complaint fall within the meaning of "occurrence” as that term is defined in the general liability insurance policy purchased by plaintiff Family Services from the defendant.
Considering now the second basis for the insurer’s disclaimer, the pollution exclusion clause states that it removes from coverage:
"(1) * * * 'bodily injury’ or 'property damage’ arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
"(a) at or from premises you own, rent or occupy;
"(b) at or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste material;
"(c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or
"(d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:
"(i) to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants, or
"(ii) if the pollutants are brought on or to the site or location by or for you.
*51 "(2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.”
In particular, defendant insurer points to paragraph (1) (d) (ii) of the above-quoted pollution exclusion clause and contends that it is directly applicable to the damages sought in Snyder.
This court concludes, however, that nothing in the Snyder complaint alleges that Family Services or any contractors or subcontractors working on its behalf were "performing operations” at the Jessie home. Instead, what is alleged is that Family Services arranged with a fuel service to deliver heating oil to a tank already installed at the Jessie residence.
Although defendant insurer cites Budofsky v Hartford Ins. Co. (147 Misc 2d 691) in support of its position, that case fell within paragraphs (1) (a), (b) and (2) of a nearly identical pollution exclusion clause because it involved an owner of premises whose tenants generated industrial wastes and, further, because State and local agencies had directed that the wastes be cleaned up.
In the case at bar, the court finds that the allegations of the Snyder complaint do not fall within any of the enumerated paragraphs of the pollution exclusion clause and thus cannot properly be excluded from coverage on those grounds.
Based upon all of the above, this court finds no basis for defendant’s disclaimer.
Consequently, defendant’s motion to dismiss the complaint is hereby denied.