AMERICAN STATES INSURANCE CO., Plaintiff-Respondent,

v.

SKROBIS PAINTING & DECORATING, INC., Defendant-
Appellant,†

CITY OF STEVENS POINT, Defendant.

Court of Appeals

*No. 92–0809. Submitted on briefs February 3, 1993.—Decided
February 22, 1994.*

(Also reported in 513 N.W.2d 695.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Michael W. Fleming* of *Raasch, Fleming & Reidenbach, S.C.,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Thomas R. Schrimpf* and *Susan R. Tyndall* of *Hinshaw & Culbertson*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J. Skrobis Painting and Decorating, Inc. (Skrobis) appeals from a summary judgment declaring that its insurance policy with American States Insurance Co. (American) did not provide coverage for the cost of remediating a fuel spill. Because the trial court correctly concluded that the absolute pollution exclusion of the policy precluded coverage, we affirm.

## I. BACKGROUND

The factual background is not in dispute. The City of Stevens Point hired Skrobis, a painting contractor, to paint a water tower. On August 14, 1989, while working on that job, Skrobis employees were filling a compressor with diesel fuel from a tank that they had brought to the work site. When a storm developed, Skrobis employees turned to protect their work from the storm, but neglected to turn off the fuel tank spigot. As a result, approximately 100 gallons of diesel fuel

447

overflowed from the compressor to the ground in the area of the water tower.

Pursuant to the Hazardous Substance Spill Law, § 144.76, STATS., the City of Stevens Point notified the Wisconsin Department of Natural Resources and the DNR, in turn, directed Skrobis, as the party responsible for the cost of the cleanup under § 144.76(7)(b), STATS., to remediate the site with excavation and disposal of the contaminated soil. Skrobis, directly and through subcontractors, remediated the site.

On August 29, 1989, Skrobis submitted a claim for reimbursement for the remediation costs through its insurance agent to American. After investigating the incident, American filed an action on April 12, 1991, for declaratory judgment and, on November 22, 1991, moved for summary judgment. The trial court held a hearing on January 27, 1992, and granted summary judgment to American, stating:

> The essential facts which attend . . . the happening of this loss are not disputed and the language of Skrobis' policy relating to the pollution exclusion is absolute, unambiguous, and admits of no interpretation other than the fact that this loss is not covered because of the pollution exclusion.
>
> The reasonable expectation of the parties is immaterial here because that only applies to what the parties reasonably expected by looking at the language and the policy and gleaning the meaning from the language.
>
> That is not Mr. Skrobis's thesis. He says he is certain that the insurance company and he both intended to have this type of activity covered, but that is not allowable inquiry when the language of the policy itself is unambiguous, as I conclude this language is.

On February 14, 1992, the trial court entered judgment from which Skrobis appeals.

## II. DISCUSSION

Skrobis first purchased insurance from American in 1989. The policy covering the period of the Stevens Point fuel spill excluded coverage for:

> "[P]roperty damage" arising out of the actual . . . discharge, disbursal, release or escape of pollutants: . . . at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations: . . . if the pollutants are brought on or to the site or location in connection with such operation.
>
> Any loss, cost or expense arising out of any governmental direction or request that you treat for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including . . . chemicals and waste.

Skrobis concedes that the fuel spill resulted in " 'property damage' " at a "site or location" where it was "working." Skrobis also concedes that the diesel fuel was a "pollutant[ ]" and the remediation costs for which it seeks insurance coverage were "expense[s] arising out of . . . governmental direction or request." Nevertheless, Skrobis contends that the policy's " 'absolute' pollution exclusion is subject to a *latent* ambiguity, that being the intention of the parties as to whether the exclusion was to apply to construction accidents." (Emphasis in original.) Therefore, Skrobis argues in somewhat circular fashion, the trial court should have looked beyond the policy to the intent of the parties in order to locate "latent ambiguity" that, in turn, would

449

have led it to interpret the policy according to what Skrobis contends were the intentions of the parties. We conclude, however, that the trial court correctly declined to do so.

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact. *Heck & Paetow Claim Service, Inc. v. Heck*, 93 Wis. 2d 349, 355, 286 N.W.2d 831, 834 (1980). We review summary judgment *de novo*, using the same standards and methodology applied by the trial court. *See Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991); *Capitol Indem. Corp. v. Reasbeck*, 166 Wis. 2d 332, 336, 479 N.W.2d 247, 249 (Ct. App. 1991). The court must first examine the pleadings to determine whether the plaintiff has stated a claim for relief. *Voss*, 162 Wis. 2d at 747, 470 N.W.2d at 628. If it has, the court then shifts its inquiry to whether any factual issues exist. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The court must grant summary judgment if the pleadings, depositions, answers, admissions and affidavits show that there is no genuine issue of material fact and, as a matter of law, that the moving party is entitled to judgment. *Voss*, 162 Wis. 2d at 748, 470 N.W.2d at 629.

Skrobis' arguments involve the construction of the exclusionary clause in the policy. "It is well settled that the construction of an insurance policy is a question of law for the court and, therefore, is reviewed *de novo*." *Kaun v. Industrial Fire & Casualty Ins. Co.*, 148 Wis. 2d 662, 667, 436 N.W.2d 321, 323 (1989). Although insurance policies, like other contracts, are construed to ascertain and effectuate the parties' intentions, *id.* at 668-69, 436 N.W.2d at 324, a clear contractual provi-

sion must be construed as it stands, *Duncan v. Ehrhard*, 158 Wis. 2d 252, 259, 461 N.W.2d 822, 825 (Ct. App. 1990). Further, as a matter of law, an insured cannot have a reasonable expectation of coverage where an unambiguous policy excludes coverage. *See Ramharter v. Secura Ins.*, 159 Wis. 2d 352, 356-57, 463 N.W.2d 877, 879 (Ct. App. 1990). Thus, regardless of the alleged intentions of the parties, when unambiguous policy language precludes coverage, "it is fundamental that no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate" according to the policy. *Inter-Insurance Exch. v. Westchester Fire Ins. Co.*, 25 Wis. 2d 100, 104, 130 N.W.2d 185, 188 (1964). Despite the apparently unambiguous language of this policy, however, Skrobis offers two theories in support of its contention that "latent ambiguity" attends this absolute pollution exclusion.

## A. Policy History

Skrobis first argues that because the absolute pollution exclusion language used in this policy was not introduced in American's policies until 1986, and because previous language would have provided coverage, this policy history somehow establishes that "the 'absolute' pollution exclusion was not intended to exclude coverage for damages sustained due to construction accidents." Skrobis explains that for the period immediately preceding the time when American introduced the absolute pollution exclusion, Skrobis had insurance with another company that, like American, had a nonabsolute pollution exclusion that would have allowed coverage for this incident. Thus, Skrobis says, it "did not intend to forfeit its insurance coverage for construction accidents when purchasing [Ameri-

can's] insurance policy." Citing *Gross v. Lloyds of London Ins. Co.*, 121 Wis. 2d 78, 87, 358 N.W.2d 266, 271 (1984), Skrobis therefore argues that this "new language" would have to have been "highlighted . . . to put insureds on notice that the standard form liability policy . . . had been changed."

Skrobis' argument has no merit. *Gross* considered the continuation and renewal of insurance with the same insurer. Here, by contrast, not only do we have several years between what Skrobis alleges to have been old and new language, but we have a different insurer.[1] Skrobis did not encounter "new language" renewing a policy with American. Rather, it obtained its first policy with American in 1989. Skrobis was responsible for the selection of appropriate coverage, and American had no obligation to inform Skrobis of any difference between this policy and one that it or another insurer may have offered several years before. *See Nelson v. Davidson*, 155 Wis. 2d 674, 679-685, 456 N.W.2d 343, 345-347 (1990) (generally, an insurance agent has no affirmative duty to advise a client regarding availability or adequacy of policy coverage).

## B.  Cause of Damage

Skrobis next argues that the absolute pollution exclusion does not preclude coverage because the property damage arose not from the "disbursal, release or

---

[1] Further, as American points out, § 631.36(5), STATS., "Renewal with Altered Terms," requires the insurer to notify the policyholder within 60 days of the renewal date "if the insurer offers or purports to renew [a] policy but on less favorable terms or at higher premiums." The statute does not require such notice to a new policyholder where renewal of an existing policy is not involved.

escape of pollutants," but rather, from the "negligent spilling of diesel fuel." Thus, Skrobis suggests that the exclusion is inapplicable to the spill or, at the very least, that the exclusion is ambiguous because of its failure to clarify whether the policy excludes coverage for damage resulting from the negligence of Skrobis employees, or from the pollution resulting from the spill. Accordingly, Skrobis again contends that the trial court should have looked to the parties' intentions and determined that Skrobis and American anticipated full coverage for such a construction accident.

Skrobis is incorrect. There is a difference between theories of liability for an occurrence and an occurrence itself. Although the theory of liability asserted may change, the occurrence that caused the injury will not. Here, application of the absolute pollution exclusion does not depend on "theories of liability" regarding whether, in some metaphysical sense, the property damage was caused by initial negligence, subsequent pollution, or both, but merely on the fact or "occurrence" of property damage as a result of the pollution.

Although this is our first opportunity to consider the arguable distinction between initial causation and subsequent property damage in the context of an absolute pollution exclusion, other jurisdictions have provided cogent analyses in cases similar to this one.

In *Guilford Industries, Inc. v. Liberty Mutual Ins. Co.*, 688 F. Supp. 792 (D. Me. 1988), *aff'd*, 879 F.2d 853 (1st Cir. 1989), oil tanks at a textile mill ruptured in a flood and spilled oil that damaged downstream properties. The plaintiff-insured, owner of the textile mill, sought a declaratory judgment that its policy covered the costs of the state-ordered remediation and the property owners' damages. The plaintiff argued that the absolute pollution exclusion should not preclude

453

coverage because "the proximate or efficient cause of the damage to property owners was the flood" and the policy covered occurrences including floods.

The court rejected the argument, concluding that even if the policy covered flood damage, such coverage still was subsumed by the absolute pollution exclusion. The court explained that to conclude otherwise "would be tantamount to reading the Pollution Exclusion Clause out of the policy altogether" because of the likelihood that pollution damages almost always are caused, in part, by an "intervening factor" such as a flood or an oil spill. *Id.* at 796. Applying an absolute pollution exclusion that, in all its relevant terms, was virtually identical to the one before us, the court concluded that the exclusion was "clear and unambiguous" and that it precluded coverage. *Id.* at 793.

In *League of Minnesota Cities Ins. Trust v. City of Coon Rapids*, 446 N.W.2d 419 (Minn. Ct. App. 1989), spectators at an ice arena suffered lung injuries when levels of nitrogen dioxide, a toxic byproduct of a Zamboni ice cleaning machine, built up in the arena. In anticipation of claims against the City of Coon Rapids, the city's insurer sought a declaratory judgment that the absolute pollution exclusion of its policy with the city precluded coverage.

The city argued that the absolute pollution exclusion, virtually identical to the one before us, did not preclude coverage because the injuries "resulted not only from the emission of pollutants, but also from their build-up . . . due to the city's alleged failure to maintain the Zamboni machine, adequately ventilate and test the arena, and warn injured parties of health dangers." *Id.* at 420. Citing authorities including *Guilford*, the court rejected the city's argument noting that "pollutants normally will not cause harm without

some intervening cause." *Id.* at 421. The court found that the plain language of the absolute pollution exclusion precluded coverage.[2]

Similarly, here, although Skrobis may view its employees' negligence as an "intervening cause," the absolute pollution exclusion of this policy specifically applies to property damage "arising out of" a spill of pollutants regardless of the theoretical source of the damage.

For the most part, Skrobis relies on cases that considered specific definitions within absolute pollution exclusions. *See In re Hub Recycling*, 106 B.R. 372 (Bankr. D. N.J. 1989) (whether recycled materials were irritants or contaminants for the exclusion to apply); *Family Serv. of Rochester, Inc. v. National Union Fire Ins. Co.*, 562 N.Y.S.2d 358 (N.Y. Sup. Ct. 1990) (whether delivering home heating oil was "performing operations" under the policy exclusion). Because Skrobis concedes that, under the terms of the policy, the fuel it spilled was a "pollutant" that produced "property damage" at a "site or location" where it was "working," no such definitional dispute is present here and, therefore, these decisions offer no guidance. Of similarly little assistance to Skrobis is its reliance on cases considering policies with absolute pollution exclusions that also included exceptions for "sudden and accidental" releases of pollutants. *Grinnell Mut. Reins. Co. v. Wasmuth*, 432 N.W.2d 495 (Minn. Ct. App. 1988); *Bentz v. Mutual Fire, Marine & Inland Ins. Co.*,

---

[2] The court also rejected the city's argument that the policy exclusion was ambiguous because it failed to define "arising out of." *Id.* at 422.

575 A.2d 795 (Md. Ct. Spec. App. 1990). No such exception is in this policy.[3]

As indicated by another court considering a virtually identical absolute pollution exclusion:

> This pollution exclusion is just what it purports to be-absolute-and the Court perceives no reason why [the insurer] should be denied the benefit of its bargain with [the insured], as reflected in the insurance contract.

*Alcolac Inc. v. California Union Ins. Co.*, 716 F. Supp. 1546, 1549 (D. Md. 1989). The same is true here. Therefore, we conclude that the absolute pollution exclusion of American's policy with Skrobis precluded coverage for Skrobis' costs of remediation. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

---

[3] Skrobis also cites *DuPont v. Admiral Ins. Co.*, C.A. No. 89C-AU-99, 1990 WL 140100 (Del. Super. Ct. Sept. 19, 1990), an unreported trial court decision that indeed is the only authority it offers that does support its argument that, notwithstanding the clear and unambiguous policy language, a court should look beyond the policy to interpret its terms according to extrinsic evidence of the parties' intentions. Although it is difficult to reconcile *DuPont* with the prevailing authorities, we note that even *DuPont* acknowledges, "Virtually every court which has addressed the meaning of 'absolute' pollution exclusions has held on summary judgment that [the] exclusions . . . were clear and unambiguous and precluded insurance coverage." *Id.* at *2.