Robert E. LEE & ASSOCIATES, INC., Plaintiff,

v.

David J. PETERS, individually, and Peters Service Center, Inc., Defendants-Third Party Plaintiffs-Counter Defendants-Fifth-Party Plaintiffs-Sixth Party Plaintiffs-Appellants,

v.

Carl KLEMM, INC., D/B/A Klemm Tanklines, a Wisconsin Corporation, Third Party Defendant-Fourth Party Plaintiff-Counter-Plaintiff, †

GREAT WEST CASUALTY COMPANY, Fourth Party Defendant,

INTEGRITY MUTUAL INSURANCE COMPANY, Fifth-Party Defendant-Respondent,

Richard CISLER, Sixth-Party Defendant.

Court of Appeals

*No. 96–0172. Submitted on briefs October 1, 1996.—Decided November 19, 1996.*

(Also reported in 557 N.W.2d 457.)

†Petition to review denied.

On behalf of the defendants-third party plaintiffs-counter defendants-fifth-party plaintiffs-sixth party plaintiffs-appellants, David J. Peters and Peters Service Center, Inc., the cause was submitted on the briefs of *Steven P. Bogart* and *Colleen D. Ball* of *Reinhart, Boerner, Van Deuren, Norris & Rieselback, S.C.* of Milwaukee.

On behalf of the fifth-party defendant-respondent, Integrity Mutual Insurance Company, the cause was submitted on the brief of *Paul J. Pytlik* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   David J. Peters and Peters Service Center, Inc., (Peters), appeal a summary judgment

granted in favor of Integrity Mutual Insurance Company (Integrity). Peters asserts that Integrity's commercial property insurance policy affords coverage to Peters for costs incurred to remediate contamination on its property, and that Integrity's commercial general liability policy (CGL) obligates Integrity to indemnify and defend Peters against Klemm's counterclaim.

Integrity argues that its commercial property policy and CGL do not afford coverage to Peters. We conclude that Peters is not covered under Integrity's commercial property policy or the personal injury provision of Integrity's CGL policy, but that there is coverage for the groundwater contamination under the property damage provision of the products/completed operations form of Integrity's CGL.

The relevant facts are not disputed. David J. Peters owns and operates Peters Service Center, a gas station located in Green Bay. The gas station stores gasoline in underground storage tanks. The tank for unleaded gasoline holds 8,000 gallons of fuel.

On October 18, 1991, at 9:15 p.m., Peters measured 23.5 inches, or 1,526 gallons, of gasoline in its unleaded fuel tank. Peters ordered 6,000 gallons of unleaded gas from Grosskopf Oil, Inc., which subcontracted delivery of the gas to Klemm. Later that night, at approximately 11:45 p.m., Klemm's employee, Richard Cisler, delivered a load of gasoline to Peters. After Cisler measured 22.5 inches[1] of gasoline in Peters' unleaded fuel tank, he pumped 6,500 gallons of unleaded gasoline, 500 more gallons than Peters ordered, into the tank.

---

[1] This measurement equates to 1,431.55 gallons on the tank's conversion chart.

On October 19, 1991, Peters discovered gasoline in the manhole for the unleaded tank fill pipe and recognized that a gas spill had occurred. Peters promptly notified the Wisconsin Department of Natural Resources (DNR) and retained 149 Wis. 2d 64, 437 N.W.2d 884 (1989). & Associates, Inc., an environmental consultant, to investigate the spill and develop a remediation plan. Lee's test results indicated that the groundwater in the vicinity of Peters Service Center was contaminated with unleaded gasoline.

The DNR investigated the spill, issued a notice of violation of § 144.76, STATS., the hazardous substance spills statute, to Klemm, and ordered Klemm to hire an environmental consultant to investigate the contamination and prepare a remediation plan. The DNR concluded that soil and groundwater contamination had occurred at the Peters site. Klemm's consultant excavated soil from the site, constructed monitoring wells and analyzed numerous soil samples. The test results indicated that the soil contamination was not the result of a single spill, but instead was caused by spills of gasoline produced prior to 1991, as well as the unleaded gasoline delivered by Klemm on October 19, 1991.[2]

This appeal arises from a lawsuit filed by Lee against Peters, seeking payment for the environmental remediation services it provided to Peters. Peters filed a third-party action against Klemm, contending that Klemm was responsible for the spill. Klemm filed a fourth-party complaint against its insurer, Great West Insurance Company, and a counterclaim against

---

[2] Any possible prior spills that may have resulted in contamination are not at issue in this lawsuit. The counterclaim only concerns contamination resulting from the spill caused by Klemm.

Peters. Klemm subsequently joined Great West on the grounds that coverage was available to Klemm.

Klemm's counterclaim against Peters alleged that much of the contamination remediated through the cleanup was from gasoline spills predating the Klemm spill. Peters filed a fifth-party complaint against its insurer, Integrity Mutual Insurance Company, claiming that the damages alleged in the counterclaim were covered by Integrity. Integrity filed a sixth-party action against Richard Cisler, Klemm's employee.

Peters' fifth-party action against Integrity is the subject of this appeal. The allegations in Klemm's counterclaim involve the response costs incurred by Klemm to remediate the environmental contamination at the Peters site. At issue in this appeal are the applicability and interpretation of various provisions of Integrity's insurance policy.

■■■

The construction of an insurance policy presents a question of law, which we review independently of the trial court. *American States Ins. Co. v. Skrobis Painting & Decor., Inc.*, 182 Wis. 2d 445, 450, 513 N.W.2d 695, 697 (Ct. App. 1994). We review summary judgments de novo. *Id.* Summary judgment is appropriate "if the pleadings, depositions, answers, admissions and affidavits show that there is no genuine issue of material fact and, as a matter of law, that the moving party is entitled to judgment." *Id.*

■■■

Several general principles guide the interpretation of an insurance policy in Wisconsin. The court must construe the words of the policy's provisions as would a reasonable person in the position of the insured. *School District of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 367, 488 N.W.2d 82, 88-89 (1992). In order to

515

determine whether the insurer has a duty to defend the claim, the court must compare the allegations in the complaint against the insured to the terms of the policy. *Id.* at 364-65, 488 N.W.2d at 87-88. The court must narrowly construe policy exclusions against the insurer and resolve any ambiguities in the policy in favor of coverage. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598 (1990).

Peters argues that Integrity's commercial property policy affords insurance coverage because the damage caused to Peters was a loss related to a vehicle when Klemm unloaded the gasoline from his truck. We disagree. At issue are the following provisions regarding the cleanup and removal of pollutants:

> We will pay your expense to extract "pollutants" from land or water at the described premises if the release, discharge or dispersal of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period.

"Pollutants" are defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

The policy's Cause of Loss-Special Form expressly excludes the following occurrences from coverage:

> Release, discharge or dispersal of "pollutants" unless the release, discharge or dispersal is itself caused by any of the "specified causes of loss". But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting damage caused by the "specified cause of loss".

> "Specified Cause of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or *vehicles;* riot or civil commotion; vandalism;

516

leakage from fire extinguishing equipment, sink-hole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage. (Emphasis added.)

Although Integrity's commercial property policy does not define "vehicles," Wisconsin courts have interpreted vehicular insurance provisions on a number of occasions. In some of these cases, the courts have adopted a broad interpretation of the terms "arising out of the use of a vehicle." For example, our supreme court determined that the accidental shooting of an insured passing motorist by a disabled deer hunter who was seated in the bed of his pickup truck arose out of the use of the truck for purposes of underinsured motorist insurance coverage. *Thompson v. State Farm Mut. Auto. Ins. Co.*, 161 Wis. 2d 450, 463, 468 N.W.2d 432, 437 (1991); *see also Kemp v. Feltz*, 174 Wis. 2d 406, 417, 497 N.W.2d 751, 756 (Ct. App. 1993).[3]

However, Integrity's commercial property policy does not refer to conduct "arising out of the use of" a vehicle. Instead, the policy refers to a vehicle as a "specified cause of loss." We recognize a significant difference between damages "arising out of" the use of a vehicle and damages "caused by" a vehicle. As stated by our supreme court, "The words 'arising out of the use' are very broad, general and comprehensive terms, and we believe they should generally be accorded a reason-

---

[3] The injuries sustained by an insured when she was bitten by a dog that was tethered to a parked Jeep "arose out of" the "use" of a motor vehicle. *Trampf v. Prudential Prop. & Cas. Co.*, 199 Wis. 2d 380, 389-90, 544 N.W.2d 596, 600 (Ct. App. 1996). The conduct of a driver, who called and motioned to a child pedestrian to cross the street, also constituted "use" of the vehicle for insurance purposes. *Garcia v. Regent Ins. Co.*, 167 Wis. 2d 287, 304-06, 481 N.W.2d 660, 668-69 (Ct. App. 1992).

ably liberal construction." *Tomlin v. State Farm Mut. Auto. Liab. Ins. Co.*, 95 Wis. 2d 215, 225, 290 N.W.2d 285, 290-91 (1980).

> These words are commonly understood to mean "originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided." However, this causal relationship is not of the type which would ordinarily be necessary to warrant a finding of "proximate cause" or "substantial factor" as those terms are used in imposing liability for negligent conduct. Rather, the focus of this "causation" inquiry is on the risk for which coverage has been afforded.

*Garcia v. Regent Ins. Co.*, 167 Wis. 2d 287, 294-95, 481 N.W.2d 660, 663-64 (Ct. App. 1992) (citing *Lawver v. Boling*, 71 Wis. 2d 408, 238 N.W.2d 514 (1976)). Therefore, we conclude that a broad interpretation of the term "vehicle" is not warranted under the terms of Integrity's commercial property policy.

■

We are not persuaded that the release, discharge or dispersal of the gasoline onto Peters' property was "caused by" Klemm's truck. When an independent act causes the damage at issue, the fact that the vehicle was used as a means of transportation to the site and was present at the site when the damage occurred does not necessarily establish coverage, even under a broad "arising out of the use" provision. *See Saunders v. National Dairy Prod. Corp.*, 39 Wis. 2d 575, 582-83, 159 N.W.2d 603, 607 (1968); *Snouffer v. Williams*, 106 Wis. 2d 225, 228-29, 316 N.W.2d 141, 142-43 (Ct. App. 1982). The facts of this case indicate that the conduct of Klemm's employee resulted in the release of contaminants. Klemm's truck was used merely to transport the

gasoline to Peters' property. In light of these circumstances, it would be inaccurate for us to conclude that the truck caused the gasoline spill. We therefore conclude that Integrity's commercial property policy does not provide Peters with insurance coverage for the remediation costs.

Next, Peters argues that the Coverage B provision of Integrity's CGL requires Integrity to indemnify and defend Peters for the spill as a "personal injury." We disagree. The Coverage B clause provides that Integrity will do the following:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" . . . to which this insurance applies.
>
>     . . . .
>
> "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
>
>     . . . .
>
> c.  Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies.

The issue is whether this CGL clause requires Integrity to defend and indemnify Peters in connection with the counterclaim. In Wisconsin:

> An insurance company's duty to defend an insured sued by a third party is determined solely by the allegations in that third party's complaint. Any doubt as to whether or not the insurance company has a duty to defend is "resolved in favor of the insured." Although an insurance company that "declines to defend does so at [its] peril," it is not liable to its insured unless there is, in fact, coverage

under the policy, or coverage is determined to be "fairly debatable."

*Production Stamp. Corp. v. Maryland Cas. Co.*, 199 Wis. 2d 322, 326-27, 544 N.W.2d 584, 586 (Ct. App. 1996) (citations omitted). The allegations in the counterclaim against Peters involve contribution for the response and remediation costs incurred by Klemm.

Our review of this issue is guided by *Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), and its progeny. In *Edgerton*, the DNR sent a letter to the property owners of a landfill to notify them that the site was contaminated, and to request their voluntary assistance in cleaning up the contamination on their property. *Id.* at 759-60, 517 N.W.2d at 468. When the property owners sought coverage from their insurers for the environmental damage to their own property, the insurers denied coverage. *See id.* at 762, 517 N.W.2d at 469. The CGL policy provisions in *Edgerton* were similar to Integrity's: both promised to defend any "suit seeking damages" and to indemnify the insureds for "damages" that the insureds were "legally obligated to pay." *See id.* at 758-62, 517 N.W.2d at 468-69.

The pertinent question in *Edgerton* was whether there was a "suit seeking damages." Our supreme court decided that the DNR letter did not trigger the insurance companies' duty to defend under the terms of the CGL because the notification was not a "suit."[4] *Id.* at 758, 517 N.W.2d at 468. The court also decided that the

---

[4] The parties do not deny that Klemm's counterclaim constitutes a "suit." A "suit" is defined as follows:

[A]ny proceeding by one person or persons against another or others in a court of law in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or equity.

past and future remediation costs were "equitable relief," rather than "damages" as that term was used in the insurance policies. *Id.* at 783-85, 517 N.W.2d at 478-79. In the words of the court, "[A]s an equitable form of relief, response costs were not designed to compensate for past wrongs; rather, they were intended to deter any future contamination by means of injunctive action, while providing for remediation and cleanup of the affected site." *Id.* at 785, 517 N.W.2d at 478. The court concluded that because this type of damage was not "legal damages," it was not covered under the provisions of the insurance policies. *Id.*

We agree with Peters that the effect of *Edgerton* is not to deny any and all coverage to an insured whenever a case involves contaminated property. Cases decided after *Edgerton* have limited its holding. In *General Cas. Co. v. Hills*, 201 Wis. 2d 1, 548 N.W.2d 100 (Ct. App. 1996), we decided that *Edgerton* did not preclude insurance coverage for environmental contamination to the property of a third party. The third party sought monetary compensation for the response and remediation costs it incurred to clean up environmental contamination to which the insured contributed. *Id.* at 11, 548 N.W.2d at 104. We decided that these damages were "damages" covered by the insurer's CGL policy, and that a contrary conclusion was "neither required by *Edgerton* nor consistent with the purpose of CGL policies: to indemnify insureds for damage they cause to others' property." *Id.* at 12, 548 N.W.2d at 104.

In *Sauk County v. Employers Ins.*, 202 Wis. 2d 434, 550 N.W.2d 439 (Ct. App. 1996), the court reached a similar result. It stated that *Edgerton* "does not say

---

*Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 774, 517 N.W.2d 463, 474 (1994).

that contribution and indemnification claims do not constitute legal damages," and that *Hills* "specifically rejected the argument that suits premised solely upon recovering for costs incurred to clean up and remediate environmental contamination will never constitute 'suits seeking damages.' " *Sauk County*, 202 Wis. 2d at 443-44, 550 N.W.2d at 443. The court concluded that *Edgerton* is dispositive when the remediated property is the insured's own property, but that *Hills* governs when the remediated property is that of a third party. *Sauk County*, 202 Wis. 2d at 443-44, 550 N.W.2d at 443.

*Edgerton* is distinguishable from the instant case. The contamination at issue in *Edgerton* only affected property owned and operated by the insureds. In contrast, we are persuaded by Peters' argument that the contamination affected property owned and operated by Peters, as well as the groundwater supply, which was not property owned and operated by Peters. After its investigation of the Peters site, the DNR determined that soil and groundwater contamination resulted from the gasoline spill. Groundwater contamination is damage to public property rather than property owned by an individual. *Patz v. St. Paul Fire & Marine Ins. Co.*, 817 F. Supp. 781, 783-84 (E.D. Wis. 1993).

Additionally, the insureds in *Edgerton* sought coverage for the remediation costs they would incur in response to the DNR letter. Here, the remediation work was performed by Klemm, and Peters now seeks indemnification for the liability he may incur from claims asserted by Klemm. In the counterclaim, Klemm alleged claims for contribution, unjust enrichment/quantum meruit, and negligence, and requested

compensatory damages from Peters.[5] In this respect, and because the contaminated property was not only Peters' property, this case falls within the scope of *Hills* and *Sauk County*. Because Klemm has asserted a "suit seeking damages," insurance coverage is not precluded by *Edgerton*.

Because *Edgerton* does not preclude the coverage, we must consider Peters' argument that the groundwater contamination constitutes a "wrongful entry" under the personal injury provision. Peters relies on several cases in which the courts have decided that groundwater contamination can constitute negligent trespass or "wrongful entry," resulting in coverage under personal injury insurance coverage provisions such as the provision at issue in this case. *See City of Edgerton v. General Cas. Co.*, 172 Wis. 2d 518, 550, 493 N.W.2d 768, 781 (Ct. App. 1992), *modified* in 184 Wis. 2d 750, 517 N.W.2d 463 (1994) ("We conclude that access to, and use of, an undefiled underground water supply is a right of private occupancy. The invasion of that right is a [covered] personal injury liability . . . ."); *see also Scottish Guarantee Ins. Co. v. Dwyer*, 19 F.3d 307 (7th Cir. 1994); *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 476 N.W.2d 593 (Ct. App. 1991). We decline to adopt the reasoning of this line of cases.

---

[5] Klemm's counterclaim requested the following damages from Peters:

> As a direct and proximate result of [Peters'] breach of his legal duties; Klemm has incurred $103,576.85 in costs damages and other losses, disbursements, and consultants' fees, through August 1994, in cleaning up contaminated soils resulting from [Peters'] negligent maintenance of the underground storage tanks and associated pumps and piping located at the Peters Service Center site.

Instead, we decide that there is no coverage for environmental contamination under the terms of Integrity's insurance provisions for personal injury.[6] An unambiguous insurance provision must be interpreted according to its plain meaning. *Duncan v. Ehrhard*, 158 Wis. 2d 252, 260, 461 N.W.2d 822, 825 (Ct. App. 1990.) "Where the terms of a policy are unambiguous, this court merely applies those terms rather than engaging in construction." *Id.* at 259, 461 N.W.2d at 825. In this case, we determine that the environmental contamination resulting from the gas spill does not constitute personal injury arising out of "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies," as is specified in the policy. Therefore, we conclude that Integrity's personal injury provision provides no coverage to Peters.[7]

Next, Peters argues that the CGL products/completed operations coverage form provides coverage for the spill as "property damage." We agree. The provision states that Integrity will do the following:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bod-

---

[6] *See Production Stamp. Corp. v. Maryland Cas. Co.*, 199 Wis. 2d 322, 544 N.W.2d 584 (Ct. App. 1996) (rejecting the argument that groundwater contamination was an invasion of the right to private occupancy constituting a personal injury under the applicable policy provisions).

[7] Because we conclude that there is no coverage under the personal injury provision, we do not consider here whether the pollution exclusion in Coverage A applies to the personal injury provision in Coverage B.

ily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

"Property damage" is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**[11]**

The issue is whether soil and groundwater contamination can constitute "property damage" under this provision. The contamination of Peters' property falls within these definitions. *See Maryland Cas. Co. v. Wausau Chem. Corp.*, 809 F. Supp. 680, 684-85 (W.D. Wis. 1992); *Wagner v. Milwaukee Mut. Ins. Co.*, 145 Wis. 2d 609, 613-14, 427 N.W.2d 854, 856 (Ct. App. 1988), *overruled on other grounds by Just v. Land Reclamation Ltd.*, 155 Wis. 2d 737, 456 N.W.2d 570 (1990). In *Wagner*, the underground pipes at a gasoline station cracked, causing gasoline to contaminate the soil. We decided that the cost of cleaning up the spill constituted property damage because the contamination caused a "loss of use" under the applicable property damage provision. *Id.* at 615, 427 N.W.2d at 856-57. In *Maryland Casualty*, the court addressed groundwater and soil contamination from chemical spills at the site and decided that the groundwater contamination was "property damage" within the terms of the CGL at issue. *Id.* at 693. We conclude in the instant case that there is coverage under the "property damage" provision of Integrity's CGL.

The pollution exclusion clause in Coverage A of Integrity's commercial property policy does not bar coverage under the CGL property damage provision of the products/completed operations form. We review the provisions of an insurance contract in the context of the entire policy. *Tara N. v. Economy Fire & Cas. Ins. Co.*, 197 Wis. 2d 77, 91, 540 N.W.2d 26, 32 (Ct. App. 1995). We are also "mindful of the rule that an exclusionary clause in an insurance contract is strictly construed against the insurer." *Id.* at 90, 540 N.W.2d at 32.

We have reviewed Integrity's policy in its entirety. Coverage A and the CGL products/completed operations form appear in separate sections of the insurance policy. Although the CGL products/completed operations clause contains a long list of its own exclusions, some of which are identical to those in Coverage A's absolute pollution exclusion, it does not contain its own pollution exclusion clause. If the exclusions in Coverage A were intended to apply to the other policy provisions, it is unlikely that Integrity would reiterate the same exclusions in the CGL products/completed operations clause. Therefore, we conclude that the Coverage A pollution exclusion clause does not apply to Peters' recovery for property damage under the property damage provisions of the CGL products/completed operations form.[8]

---

[8] In arriving at this conclusion, we recognize that other courts have decided that coverage is precluded by an absolute pollution exclusion. *See Production Stamp. Corp. v. Maryland Cas. Co.*, 199 Wis. 2d 322, 544 N.W.2d 584 (Ct. App. 1996); *Am. States Ins. Co. v. Skrobis Painting and Decorating, Inc.*, 182 Wis. 2d 445, 513 N.W.2d 695 (Ct. App. 1994).

Finally, we consider whether the "owned property" exclusion precludes coverage for Peters' property damage. The provision excludes coverage for "property damage" to "property you own, rent or occupy." In light of our determination that the groundwater was not property owned and operated by Peters, we conclude that the "owned property" exclusion does not preclude coverage for the costs incurred to remediate the groundwater contamination. *See Patz*, 817 F. Supp. at 783-84. The Patz court recognized the decision of the court of appeals in *Edgerton*: "[T]he owned-property exclusion does not apply where the concern is not primarily the premises of the insured, but rather the substantial harm, or risk of substantial harm, to third-party property, including natural resources belonging to the people of the state." *Id.* at 783 (quoting *Edgerton*, 172 Wis. 2d at 554, 493 N.W.2d at 783). Therefore, although Peters' recovery of costs for cleanup of the contaminated soil is barred by the exclusion, his recovery of costs for cleanup of the contaminated groundwater is not.

We agree with the court that Peters has failed to prove coverage under Integrity's commercial property policy and the personal injury clause in Integrity's CGL products/completed operations form. However, we conclude that Peters has proven coverage with regard to groundwater damage under the property damage provision of Integrity's CGL products/completed operations form. The judgment is affirmed in part, reversed in part, and cause remanded for further proceedings and a determination of attorney fees.[9]

---

[9] Peters requested this court to award attorney fees because it proved coverage under Integrity's policy. We decline to assess

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded with directions. No statutory costs are awarded on appeal.

---

the fees, and instead leave the determination of attorney fees to the discretion of the trial court.