PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRICAL
MANUFACTURERS ASSOCIATION,
Plaintiff-Appellee,

v.                                                     No. 97-2319

GULF UNDERWRITERS INSURANCE
COMPANY,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-96-985-A)

Argued: September 23, 1998

Decided: December 29, 1998

Before WIDENER and LUTTIG, Circuit Judges, and MAGILL,
Senior Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

_____

Reversed by published opinion. Senior Judge Magill wrote the opin-
ion, in which Judge Luttig joined. Judge Widener wrote a concurring
opinion.

_____

**COUNSEL**

**ARGUED:** Don Wall Fowler, LORD, BISSELL & BROOK, Chi-
cago, Illinois, for Appellant. Lorelie Sue Masters, ANDERSON,

KILL & OLICK, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Hugh S. Balsam, LORD, BISSELL & BROOK, Chicago, Illinois; Michael R. Goodstein, ARTER & HADDEN, Washington, D.C., for Appellant. Koorosh Talieh, Michele A. Gallagher, ANDER-SON, KILL & OLICK, L.L.P., Washington, D.C.; Dale R. Schmidt, NATIONAL ELECTRICAL MANUFACTURERS ASSOCIATION, Rosslyn, Virginia, for Appellee.

_____

**OPINION**

MAGILL, Senior Circuit Judge:

This case arises from a dispute between the National Electrical Manufacturers Association ("NEMA") and Gulf Underwriters Insurance Company ("Gulf") regarding Gulf's duty to defend third party claims. NEMA argues the Gulf insurance policy's pollution exclusion does not apply to relieve Gulf of its duty to defend NEMA in the underlying claims and Gulf has an unqualified duty to defend NEMA even though it is an excess insurer. We disagree with NEMA on both counts and reverse.

I.

NEMA is a trade association; its members are manufacturers of products that generate, transmit, distribute, and, in some cases, use electrical energy. NEMA promotes the competitiveness of its members by, among other things, developing technical standards for the design, manufacture, and use of electrical manufacturing products.

NEMA filed a declaratory judgment action in the United States District Court for the Eastern District of Virginia, seeking coverage and defense costs[1] in connection with direct claims against NEMA by

_____

[1] Gulf owes NEMA the duty to defend and the duty to indemnify. Before trial the parties agreed that the duty to indemnify issue was not ripe because NEMA had not been held liable to pay damages in any underlying claim. The district court considered only the question whether Gulf had a duty to defend NEMA, which is the only issue before us.

2

a number of class action welders.**2** These welders alleged NEMA knew the dangers of exposure to manganese fumes but nevertheless promulgated standards for its member companies permitting the use of manganese in welding rods. Specifically, the welders claim they were "exposed to welding fumes while using welding products or being in the proximity of other persons using welding products," and that, "[a]s a direct and proximate result of their exposure to welding fumes," they suffer neurological injuries. Although NEMA has not been found liable in the underlying actions and has been dismissed in all but four of the actions, which are now consolidated as a single class action, NEMA has incurred significant costs in defending the suits. NEMA asserts the remaining underlying action represents millions of dollars in potential liability and defense costs for NEMA.

NEMA sued Gulf and six of its primary insurers in the declaratory judgment action and subsequently settled with the six primary insurers before trial. Gulf, an excess insurer, was the only insurer that did not settle with NEMA. NEMA refused to disclose to Gulf the amount and nature of its settlement agreements with its six primary insurers.

Before trial, Gulf moved for summary judgment, alleging a pollution exclusion in its policy precluded coverage as a matter of law for the underlying actions. The district court denied Gulf's motion for summary judgment, and concluded the pollution exclusion did not relieve Gulf of its duty to defend NEMA. The case went to bench trial on the merits before a different judge on the issue of whether Gulf breached its duty to defend. Because the district court had already determined the pollution exclusion did not relieve Gulf of this duty, the only question at trial was whether, on account of the policy's excess provisions, Gulf's duty to defend NEMA had not yet been triggered.

The district court held Gulf had a duty to defend NEMA and entered an amended judgment against Gulf for $120,637.70. Gulf appeals the summary judgment ruling and judgment against it.

_____

**2** Both parties agree the Gulf insurance policy is governed by the law of the District of Columbia.

3

This Court reviews de novo the district court's denial of Gulf's motion for summary judgment on the pollution exclusion issue.[3] Benner v. Nationwide Mut. Ins. Co., 93 F.3d 1228, 1239 (4th Cir. 1996). As in the district court, this Court must construe all evidence and make all inferences in the light most favorable to NEMA, the non-moving party. Id. at 1241. The district court's conclusion of law that the excess nature of the policy did not relieve Gulf of its duty to defend is subject to de novo review by this Court. See Resolution Trust Corp. v. Maplewood Investments, 31 F.3d 1276, 1281 n.7 (4th Cir. 1994).

## II.

District of Columbia courts have held the duty to defend is broader than the duty to indemnify. Gulf is obligated to defend if any allegations in the underlying actions potentially fall within the terms of its coverage. American Continental Ins. Co. v. Pooya , 666 A.2d 1193, 1197 (D.C. 1995); see also Salus Corp. v. Continental Cas. Co., 478 A.2d 1067, 1069-70 (D.C. 1984) (noting if complaint contains any allegation within policy's coverage insurer must defend entire lawsuit). Gulf's policy further extends the duty to defend claims against NEMA even if "the allegations are groundless, false or fraudulent," as long as they are within the terms of coverage. Policy § 5.A.2. In sum, Gulf is obligated to defend NEMA for any action if that action contains any allegation potentially within the terms of coverage and regardless of whether the claims are frivolous. Where the plain language of an insurance contract is unambiguous, the court will adopt the plain meaning whether favorable to the insured or not; ambiguities will not be sought out. Medical Serv. of D.C. v. Llewellyn, 208 A.2d 734, 736 (D.C. 1965). The Gulf policy is a Specialty Errors and Omissions policy covering:

_____

[3] In finding that the pollution exclusion was ambiguous as a matter of law, the district court sua sponte entered partial summary judgment for NEMA on this issue. Thus, this Court is not precluded from reviewing the district court's denial of Gulf's motion. See Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 n.11 (4th Cir. 1995) (noting denial of summary judgment reviewable where district court granted corresponding summary judgment for opposing party).

4

The Development, publication, and dissemination of voluntary product, process or procedure standards including surveys, reports and general information, educational programs and seminars for the electrical manufacturers industry and services related to accreditation of certification programs[.]

Policy § 1.4. However, Gulf's liability is limited by a specific pollution exclusion that relieves Gulf of its obligation to "defend Claims arising directly or indirectly" from certain events. Policy § 5.B.1. Part 5.B.1.n excludes coverage for claims arising directly or indirectly from:

The actual or threatened discharge, dispersal or release of any Pollutant.... This exclusion is effective whether or not the pollution was sudden, accidental, gradual, intended, expected or preventable or whether or not any of You caused or contributed to the pollution.

"Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to:

1. smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos....

Policy § 5.B.1.n (last emphasis added).

To be effective, a provision that excludes coverage must be explicit. Nationwide Mut. Ins. Co. v. Schilansky , 176 A.2d 786, 788 (D.C. 1961). The insurer bears the burden of establishing that an exclusion bars coverage. Washington Sports and Entertainment, Inc. v. United Coastal Ins. Co., 7 F. Supp. 2d 1, 7 (D.D.C. 1998) (applying District of Columbia law).

NEMA argues the welders alleged a claim arising from negligence, not pollution, and therefore that the pollution exclusion should not operate to deny coverage with respect to the welder claims. Two factors militate against this argument: 1) NEMA commits itself that the welder claims arise from exposure to pollution and 2) the fact that the welders style their claims in negligence does not solve the pollution exclusion issue before us.

5

First, NEMA's complaint asserts the welder claims arise from the release of a gaseous pollutant, specifically, "fumes, particulates and gases containing manganese." This Court need look no further than the exclusion's plain language to conclude that it explicitly applies to the underlying actions. The exclusion serves to relieve Gulf of its duty to defend claims where those claims arise from "the creation of an injurious condition involving any <u>Pollutant</u>" Policy § 5.B.1.n. The exclusion defines "pollutant" to include any"solid, gaseous or thermal irritant or contaminant," including "fumes," and operates to exclude coverage "whether or not [NEMA] caused or contributed to the pollution." <u>Id.</u> As NEMA acknowledges, the welder claims arise from the creation of injury resulting from exposure to manganese fumes, and fumes qualify as a pollutant under the exclusion.

Second, the style of the welder claims is irrelevant to the issue whether the claims fall within the ambit of the pollution exclusion. <u>See, e.g.</u>, <u>American States Ins. Co. v. Skrobis Painting & Decorating, Inc.</u>, 513 N.W.2d 695, 698-99 (Wis. Ct. App. 1994) (noting that although theory of liability asserted may change, the occurrence that caused injury will not and rejecting argument that nature of claim alters applicability-of-exclusion analysis). Every action involving bodily injury or property damage must assert some theory of liability but the theory chosen has no impact on the cause of the injury. In analyzing the applicability of the exclusion, all that matters is whether the injurious condition about which the welders complain arose from the dissemination of a pollutant.

A number of courts have applied these exclusions literally even where the underlying claims, like the claims here, alleged negligence. <u>See, e.g.</u>, <u>American States Ins. Co. v. Nethery</u>, 79 F.3d 473, 474-75, 477-78 (5th Cir. 1996) (enforcing exclusion to apply to allegations of gross negligence); <u>Cook v. Evanson</u>, 920 P.2d 1223, 1224, 1227 (Wash. Ct. App. 1996) (enforcing pollution exclusion to apply to allegations that concrete sealant was negligently applied); <u>League of Minnesota Cities Ins. Trust v. City of Coon Rapids</u>, 446 N.W.2d 419, 420, 422 (Minn. Ct. App. 1989) (enforcing exclusion to apply to allegations of negligent failure to ventilate, negligent failure to maintain, and negligent infliction of emotional distress).

NEMA urges this Court to consider its reasonable expectation of coverage and to restrict application of the exclusion to only environ-

6

mental pollution. See, e.g., Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 530-31 (9th Cir. 1997) (considering reasonable expectations of policyholder and limiting scope of pollution exclusion); Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F.3d 34, 37 (2d Cir. 1995) (same); Regional Bank of Colorado, N.A. v. St. Paul Fire and Marine Ins. Co., 35 F.3d 494, 496 (10th Cir. 1994) (same); Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc., 73 F.3d 335, 339 (11th Cir. 1996) (construing insurance policy so as to "most accurately reflect[ ] the intention of the parties to the insurance contract").

The District of Columbia has rejected application of the reasonable-expectation test where, as here, the insurance policy is clear and unambiguous and contains neither technical terms nor terms of art. Smalls v. State Farm Mut. Auto. Ins. Co. , 678 A.2d 32, 34 (D.C. 1996). Because the pollution exclusion unambiguously covers the welder claims this Court will not apply the reasonable-expectation test to limit the breadth of the pollution exclusion.[4]

Gulf's position that the exclusion should be read as written --and not be limited to environmental pollution only--comports with the well-settled rule of District of Columbia law that if a policy is plain and unambiguous "the court will construe it without reference to any acts or conduct of the parties thereto which evince their interpretation of such contract." Bolle v. Hume, 619 A.2d 1192, 1197 (D.C. 1993) (quotation omitted); see also American Red Cross v. Travelers Indem. Co. of R.I., 816 F. Supp. 755, 758 (D.D.C. 1993) (applying District of Columbia law and noting, "If the policy language is unambiguous, the Court must apply the plain meaning of the language used and should not consider extrinsic evidence as to how to interpret the policy.").

That the pollution exclusion at issue here clearly is not limited to atmospheric or environmental pollution further supports the argument

_____

[4] With respect to every claim that potentially falls within a policy exclusion the insured will "expect" he has coverage. Were application of the reasonable-expectation doctrine extended to unambiguous insurance policies, the terms bargained for by the parties would too often be ignored or modified.

7

that it should be enforced as written. See, e.g. , Board of Regents of Univ. of Minn. v. Royal Ins. Co. of America, 517 N.W.2d 888, 893-94 (Minn. 1994) (holding pollution exclusion that did not limit its terms to atmospheric pollution applied to claim arising from release of asbestos fibers in enclosed environment).

III.

In the bench trial on the merits, the district court held that Gulf was required to pay NEMA's defense costs regardless of whether the policy was excess or primary insurance. Gulf argues that its duty to defend under its excess policy is not triggered until NEMA's primary insurance is exhausted and NEMA has not proved exhaustion of its primary coverage or other excess insurance.

The Gulf excess policy provision provides:

> If other valid and collectible insurance is available to any of You for any Claim We cover, this insurance is excess over such other insurance, except when other insurance is purchased by the Named Insured only to apply in excess of this insurance and no other insurance exists.

Policy § 7.E. While the District of Columbia courts have not authoritatively taken the position that an excess insurer's duty to defend is not triggered until primary insurance is exhausted, two federal courts applying District of Columbia law have endorsed this view. See Liberty Mut. Ins. Co. v. Travelers Indem. Co., 78 F.3d 639, 645 (D.C. Cir. 1996); St. Paul Fire and Marine Ins. Co. v. Children's Hosp. Nat'l Med. Ctr., 670 F. Supp. 393, 402 n.17 (D.D.C. 1987) (applying District of Columbia law and noting excess insurer's duty to defend triggered only when limits of primary policy are exhausted).

Numerous other courts have reached the same conclusion. See, e.g., Western Alliance Ins. Co. v. Northern Ins. Co. of N.Y., 968 F. Supp. 1162, 1169 (N.D. Tex. 1997) (applying Texas law and noting primary policy must first be exhausted before excess insurer becomes liable); Kline v. Kemper Group, 826 F. Supp. 123, 130 (M.D. Pa. 1993) (applying Pennsylvania law and noting excess policy "does not come

8

into play" until primary coverage limit has been reached); International Envtl. Corp. v. National Union Fire Ins. Co. of Pittsburgh, 843 F. Supp. 1218, 1224 n.3 (N.D. Ill. 1993) (applying Illinois law and noting, "Generally, excess policies supplement primary policies, kicking in when losses exceed primary coverage."); Signal Companies, Inc. v. Harbor Ins. Co., 27 Cal. 3d 359, 368 (1980) (noting, under California law, excess insurer has no duty to participate in insured's defense until primary coverage has been exhausted).

NEMA has not demonstrated it has exhausted its primary or other excess insurance. The burden is on NEMA to establish compliance with all policy conditions. See 19 Couch on Insurance 2d § 79:342 (noting conditions precedent must be proved by plaintiff who seeks to recover on insurance policy; insured has burden of proving satisfaction of policy obligations or waiver of them by insurer). At trial, NEMA refused to disclose the terms of the settlements with its six primary carriers and there was no evidence of other excess insurance. Gulf has no duty to defend NEMA in the underlying actions.[5]

NEMA relies primarily on two cases in support of its assertion that Gulf's status as excess insurer does not affect its duty to defend NEMA. Keene Corp. v. Insurance Co. of North America, 667 F.2d 1034, 1047-48, 1050 (D.C. Cir. 1981); Reliance Ins. Co. v. St. Paul Surplus Lines Ins. Co., 753 F.2d 1288, 1290-91 (4th Cir. 1985) (analyzing apportionment of liability between primary insurers only). Keene and Reliance are inapposite because they did not consider an excess policy like the one at issue in this case. The pertinent question

_____

[5] The policy provides limited coverage for acts occurring between September 15, 1988, the retroactive date of the policy, and September 15, 1994, the inception date of the policy. For wrongful acts committed by NEMA during this time, the burden on NEMA is even greater because Part 5.C.2.b.3 imposes an additional condition. That section of the policy provides Gulf's duties under the policy arise only if "[t]here is no other valid and collectible insurance for the Claim ." Policy § 5.C.2.b.3. Gulf has no duty to defend NEMA for acts committed during this time because, besides failing to prove its primary policies have been exhausted, NEMA has not proved it had no other valid and collectible insurance covering its acts during this period.

9

here is not how to apportion liability among multiple primary insurers, as was the case in <u>Keene</u> and <u>Reliance</u>, but rather whether NEMA satisfied the conditions precedent to Gulf's excess coverage. Because it has not, Gulf has no duty to defend NEMA in the underlying claims.

IV.

Because the pollution exclusion unambiguously and explicitly applies to exclude coverage and NEMA failed to prove primary or other excess coverage exhaustion, Gulf had no duty to defend.

<u>REVERSED</u>

WIDENER, Circuit Judge, concurring:

I concur in the majority opinion.

Since the duty to defend in a case like this is broader than the insuring clause, however, see <u>Keene Corp v. Insurance Co. of North America</u>, 667 F.2d 1034, 1050 (D.C. Cir. 1981), I would have voted to affirm were it not for the fact that NEMA refused to disclose whether or not its primary coverage was exhausted, a condition for liability under the excess coverage applicable here.

10